UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ )
AYYUB ABDUL-ALIM                )
                                )
v.                              )   CIVIL NO. 14-cv-30059-TSH
                                )
JAMES B. COMEY                  )
_____ )

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ayyub Abdul-Alim hereby sets forth his Memorandum in Opposition to Defendant's Motion for Summary Judgment.

Plaintiff relies upon his **PLAINTIFF'S RESPONSIVE PLEADING PURSUANT TO LOCAL RULE 56.1**, as the responsive pleading demonstrates that there are genuine issues of material fact that preclude a granting of summary judgment.

## STANDARD OF REVIEW

The party moving for summary judgment must meet the initial burden of demonstrating the absence of a genuine issue of material fact, upon which a reasonable jury could find for the nonmovant.  Fed.R.Civ.P. 56(c).  All facts must be viewed in the light most favorable to the nonmovant, giving the nonmovant "the benefit of all reasonable inferences that can be drawn from these facts." *Lockhart v. Cedar Rapids Comm. Sch. Dist.,* 963 F. Supp. 805, 814 (N. D. Iowa 1997) *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  "A genuine issue of material fact is one with a basis in the record." *Id.*, *quoted in Salz v. Stellar Industries,* 2004 WL 439231 (N. D. Iowa).  "A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, *Mack v. Great Atlantic*

*and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989), would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds,* 896 F.2d 5, 7 (1st Cir. 1990). "State of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind." *Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 5 (1st Cir. 1984), *quoting Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir. 1975). Under this standard, Defendant's Motion for Summary Judgment must fail.

The standard of review in this Circuit is governed by the Court's explanation in Aronson v. IRS., 973 F. 2d 962, 965-967 (1st Cir. 1992) where the Court found that de novo review of an agency's invocation of the protection of FOIA exemptions is required as FOIA supports open disclosure by the agency but in Aronson, which involved a tax statute that favors confidentiality, deference to the agency interpretation was required. In the case at bar, no tax documents are involved.

Mr. Hardy's Declaration demonstrates that Hardy's state of mind is an issue where he self-servingly claims that he punctiliously exercised his discretion as to portions of each of the thirty (30) documents, and where Plaintiff demonstrates, as to some of the documents, that the exemptions upon which Hardy relies are inapplicable and wrongful exercises of his judgment which, in essence, is his state of mind.

**THE ISSUE**

Plaintiff, as a defendant in a state superior court case, was charged with unlawful possession of a firearm. He claimed that the gun was "planted" on him by police because he rebuffed several FBI attempts to recruit him as a confidential informer about Muslim activities in his area. He sought FOIA records after meeting opposition by the District Attorney to his obtaining the records which he claimed would demonstrate the FBI's

length interest in him as an informant and after a court's overly restrictive granting of limited disclosure and the court's myopic denial of the larger request. Abdul-Alim sought these records in time for trial but, because of delays beyond his control, even though he sought continuances, went to trial. These exculpatory records would have permitted him to put on a defense, which, in light of the jury's twice reporting deadlocks, the first at 6 to 6, the second at 9(guilty) to 3(not-guilty), might very well have cause a different jury verdict. Without these records, Abdul-Alim had nothing to corroborate him. These records, moreover, can now provide substance to a motion for new trial. These records could have established times and dates of his meeting a FBI agent at a mosque; these records could have revealed the name of the FBI agent (now known to be Hisgen) who met with him and Sheehan after his arrest and who, pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) could have been subpoenaed to give testimony at the trial, just as he gave testimony at a Motion to Suppress, which occurred, after the trial but while this FOIA request was ongoing, in a second, pending case against Abdul-Alim.

Even if we assume that the FOIA statutory exemptions exercised by Hardy were correct, a statute cannot eviscerate the constitutional rights of a criminal defendant to set forth fully a defense and to obtain exculpatory evidence which supports and justifies the defense. Defendant will claim that, so long as FBI has complied with the statute, 5 U.S.C. §522, the constitutional obligation becomes irrelevant to this FOIA litigation. Plaintiff claims, however, that that position is not sustainable at the law, as a statute must succumb to the constitutional mandates of due process, fair trial and a defendant's right to exculpatory evidence.

Moreover, we must not forget that this is not a case about one person seeking information. This is a case about a criminal defendant's right to enforce the constitutional obligation of Government to disclose exculpatory evidence; this public interest to preserve the right to fair trial for all criminal defendants overwhelms the Government's reluctance to disclose and negates the FBI's refusal to disclose innocuous information or information that has already entered the public domain.

## ARGUMENT

**I.     A criminal defendant is constitutionally entitled to receive exculpatory evidence in the FBI files to corroborate his testimony that the FBI was displeased that he would not become an FBI confidential informant and further to demonstrate in a motion for new trial the relevance of his records to impeach the testimony of a chief Commonwealth trial witness, Sheehan. This evidence, corroborative of a portion of his defense that the FBI was continually rebuffed in its efforts to recruit Abdul-Alim as an informant, which Abdul-Alim claimed served as a motive for law enforcement's planting" a gun on his person,  likely would have made a difference, where the jury reported itself twice deadlocked, thereby exposing the weaknesses of the Commonwealth's case.**

*Weary v. Cain*, ___U.S. ___, 136 S.Ct. 1002, 1006 (2016) (*per curiam*), the most recent exculpatory evidence case before the United States Supreme Court, addresses this issue.

The evidence contained in the FBI records was material to the guilt of the defendant, who was claiming that the gun was "planted" on him because he refused to cooperate with the FBI and become its informant. Evidence that revealed the FBI's attempts to bring him aboard as an informant offered powerful corroboration to his defense and qualified as material where, given the two "hung" jury notes, there was reasonable likelihood that it could have affected the judgment of the jury and should

doubtlessly undermine confidence in Abdul-Alim's conviction.  That evidence must be cumulatively evaluated. *Wearry,* S. Ct. at 1007; see *Kyles v. Whitley*, 514 U.S. 419, 441, 115 S. Ct. 1555 (1955). "If the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Wearry, S. Ct. at 1006*, quoting *United States v. Agurs*, 427 U.S. 97, 113, 96 S. Ct. 2392...(1976).

> "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady [v. Maryland]*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). See also *Giglio* v. *United States*, 405 U.S. 150, 153-154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (clarifying that the rule stated in *Brady* applies to evidence undermining witness credibility). Evidence qualifies as material when there is "'any reasonable likelihood'" it could have "'affected the judgment of the jury.'" *Giglio, supra*, at 154, 92 S. Ct. 763, 31 L. Ed. 2d 104  (quoting *Napue* v. *Illinois*, 360 U.S. 264, 271, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)). To prevail on his *Brady* claim, Wearry need not show that he "more likely than not" would have been acquitted had the new evidence been admitted. *Smith* v. *Cain*, 565 U.S. 73, ___-___, 565 U.S. 73, 132 S. Ct. 627, 630, 181 L. Ed. 2d 571, 574 (2012) (internal quotation marks and brackets omitted). He must show only that the new evidence is sufficient to "undermine confidence" in the verdict. *Ibid.*

*Wearry v. Cain*, S.Ct. at 1006

While Defendant may argue that, as this case was not a joint state and federal task force investigation, the FBI was under no obligation to provide exculpatory evidence where the federal government was not the prosecutor, the facts demonstrate the contrary: Officer Sheehan was a member of the Joint Counterterrorism Task Force; Officer Sheehan brought his federal supervisor Hisgen to a post-arrest meeting with Abdul-Alim; Abdul-Alim testified at trial that Sheehan's first words to him upon his arrest were that it was his lucky day because he could cooperate, Abdul-Alim's wife as a confidential informant received federal funds. This contention is baseless and without factual support.

This "clearly exculpatory" evidence was "[e]vidence tending to impeach the credibility of [Sheehan] a key prosecution witness. *Commonwealth v. Heath*, 89 Mass. App. Ct. 323, 335 (2016).

Abdul-Alim, through Robinson's e-mail, early on in this FOIA litigation articulated to the Defendant what this exculpatory evidence would have revealed and why these records were vital to his defense. This evidence is not cumulative simply because Abdul-Alim was able to present this evidence through his own testimony. Extrinsic evidence that comes from a Governmental source is extremely valuable as a jury tool to evaluate the testimony of a criminal defendant (Abdul-Alim) and the cross-examination of a key Government witness [Sheehan] *Heath, supra, id.* Moreover, these FBI records would have supported Abdul-Alim in his desire to call his court-excluded witnesses - Dr. Ishmael Ali, who would have corroborated contact between Mr. Abdul-Alim and a federal agent at a Muslim mosque, and Mr. Benjamin Swan, who would have testified to Mr. Abdul-Alim's complaints of FBI harassment. These records also would have permitted him to obtain FBI agent Hisgen's identity, so as to seek to obtain him to testify as a trial witness to establish the history of FBI interest in acquiring Abdul-Alim as an informant. Abdul-Alim's inability to obtain these records from his FOIA request before trial began destroyed his right to make a complete defense and deprived him constitutionally to a fair trial and due process.

While FOIA statutory exemptions have validity, when their use destroys a criminal defendant's access to exculpatory evidence and thereby thwarts his ability to present his only defense, that evidence must be turned over. *Wearry v. Cain*, 136 S. Ct. 1002-1008.

## II.    Hardy's Affidavit is inadequate.

The Government has the burden to demonstrate that it has thoroughly searched for

documents where they might reasonably be found.  *Miller v. United States Dep't of*

*States*, 779 F. 2d 1378, 1383 (8ᵗʰ Cir. 1985).

> Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. *Weisberg v. U.S. Department of Justice*, 227 U.S. App. D.C. 253, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In order to discharge this burden, the agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *National Cable Television Ass'n, Inc. v. Federal Communications Comm'n*, 156 U.S. App. D.C. 91, 479 F.2d 183, 186 (D.C. Cir. 1973). The adequacy of an agency's search for requested documents is judged by a standard of reasonableness, i.e., "the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.... An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith. *Goland v. Central Intelligence Agency*, 197 U.S. App. D.C. 25, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S. Ct. 1312, 63 L. Ed. 2d 759 (1980).... The burden remains on the government to demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found. If the agency has not made this showing, then the requester can avert a motion for summary judgment merely by demonstrating some reason to think that the document would have turned up if the agency had looked for it, e.g., by showing that the document originated with the agency or that the agency is set up to retrieve just that kind of document. See *Weisberg*, 705 F.2d at 1351.

*Id.* The Government's search has been neither thorough nor adequate. Nowhere has it

disclosed the Hisden-Sheehan-Abdul-Alim meeting, despite the fact that the report of the

meeting is a FBI-generated record. Nowhere has it produced, or explained why it failed to

produce 2 CDs that it identified to Mr. Robinson. Hardy's Affidavit fails to explain why

these materials have not been produced and have offered no exemptions to refuse their

required disclosure. While Hardy's Affidavit describes the structure of the agency's file

system, the scope of the agency's search and the method by which Hardy conducted his

investigation, his Affidavit remains insufficient when Abdul-Alim demonstrates that its record systems contained responsive documents which were not disclosed and where Hardy's Affidavit fails to aver that there was a search of all files that could be searched. C.f. *Sephton v. FBI*, 365 F. Supp. 2d 91, 96 (D. Mass. 2005), aff'd 442 F. 3d 27, 29 (1st Cir. 2006). Where Abdul-Alim has shown that relevant documents **do,** not might, exist, and where the Hardy Affidavit fails to demonstrate or offer an explanation as to why his self-described thorough search fails to produce this document or the 2 CDs that were early on identified by the Agency as in existence and known to it, Abdul-Alim has satisfied the criteria to prove the inadequacy of Hardy's Affidavit.

Hardy's Affidavit did not specify in sufficient detail what records were searched and, without such crucially necessary detail, neither this Court nor Abdul-Alim is able to determine whether the scope of the search was reasonably thorough. See *Lion's Raisins, Inc. v. United States Dep't of Agric.*, 636 F. Supp. 2d 1081, (E.D. Cal. 2009) This determination is furthermore stymied by Defendant's unaccountable failure to submit the thirty (30) pages under dispute in unredacted form to the Court. Without such review, the Court is unable to determine that the claimed exemptions are correctly claimed. The Court should undertake such an *in camera* review in this matter. *Rugiero v. United States DOJ*, 257 F. 3d 534 (6th Cir. 2001) (To ensure the breadth of disclosure, the Act authorizes courts to examine documents in camera when reviewing the propriety of an agency's withholdings. 5 U.S.C. § 552(a)(4)(B). *In camera* review is a discretionary measure taken after consideration of: (1) judicial economy; (2) actual agency bad faith, either in the FOIA action or in the underlying activities that generated the records requested; (3) strong public interest 4) whether the parties request in camera review. *Ingle*

*v. Department of Justice, 698 F.2d 259, 267 (6th Cir. 1983),* overruled on other grounds by *United States Dep't of Justice v. Landano,* 508 U.S. 165, 124 L. Ed. 2d 84, 113 S. Ct. 2014 (1993).) Again, we have no detail as to the identification of the 2 CDs other than they are "verbal." Lastly, the Affidavit claims that one of the thirty (30) pages is disclosed in full, but an examination of that page, 807, reveals no information on it at all, thus demonstrating the inadequacy of Hardy's Affidavit.

> In cases where the agency's search for responsive records is at issue, the agency must demonstrate "that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA,* 767 F.2d 569, 571 (9th Cir. 1985) (internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Id.* (emphasis and internal quotation marks omitted). The "adequacy of the search . . . is judged by a standard of reasonableness" and to demonstrate the "adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (internal quotation marks omitted); *see also Citizens Comm'n on Human Rights v. FDA,* 45 F.3d 1325, 1328 (9th Cir. 1995). While an ultra-thorough search is not required, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 27, 334 U.S. App. D.C. 20 (D.C. Cir. 1998) (internal quotation marks omitted)....In assessing the adequacy of the search, when the agency is moving for summary judgment, the facts are construed "in the light most favorable to the requestor." *Citizens Comm'n on Human Rights,* 45 F.3d at 1328.

*Lion's Raisins, Inc. v. United States Dep't of Agric.,* 636 F. Supp. 2d 1081, 1104 (E.D. Cal. 2009)

> In response to a FOIA request, an agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information. *Campbell v. United States Dep't of Justice*, 334 U.S. App. D.C. 20, 164 F.3d 20, 27 (D.C. Cir. 1998). **The FOIA requires a reasonable search tailored to the nature of the request.** *Id.* at 28. At all times the burden is on the agency to establish the adequacy of its search. *Patterson v. IRS,* 56 F.3d 832, 840 (7th Cir. 1995); *Steinberg v. United States Dep't of Justice,* 306 U.S. App. D.C.

240, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 240 U.S. App. D.C. 339, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

*Rugiero v. United States DOJ*, 257 F. 3d 534, 547 (6th Cir. 2001). In the case at bar, Abdul-Alim, in Exhibit AA of Hardy's Decl., Exhibits C, D and F of Aff. of James B. Krasnoo, specifically narrowed his requests.  Those requests included a request for a report of the Abdul-Alim, Sheehan and Hisgen meeting, a report which was never produced by FBI but which was produced in open Court in a Motion to Suppress hearing open to the public. Where Mrs. Stewart, Abdul-Alim's ex-wife, testified at motions and at Abdul-Alim's public trial that she was a government informant receiving compensation from FBI, as did Sheehan, the trial transcripts showed that that information was already publicly disclosed, and required FBI to search for and produce records with information identical to that already disclosed. *North v. United States DOJ*, 810 F. Supp. 2d 205, 207 (D.C. Col. 2011) "'As a general principle, an agency may not rely on an otherwise valid exemption to justify withholding information that is already in the public domain. *Students Against Genocide v. Dep't of State,* 347 U.S. App. D.C. 235, 257 F.3d 828, 836 (D.C. Cir. 2001). A plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Public Citizen v. Dep't of State,* 349 U.S. App. D.C. 291, 276 F.3d 634, 645 (D.C. Cir. 2002) (internal quotation marks omitted)." *Canning v. United States DOJ,* 567 F. Supp. 2d 104, 112 (D.C. Col. 2008); *Dow, Lohnes & Albertson v. Presidential Com. On Broadcasting to Cuba,* 624 F. Supp. 572, 578 (D.C. Col. 1984). "[F]or summary judgment to be appropriate, the agency's *Vaughn* Index must set forth **with particularity the justification for any specific exclusions, relating the justification to the particular part of the document to which it applies.** *Mead Data*

*Cent., Inc. v. United States Dep't of the Air Force,* 184 U.S. App. D.C. 350, 566 F.2d 242, 251 (D.C. Cir. 1977)." *Canning v. United States DOJ,* 567 F. Supp. 2d 104, 108 (D.C. Col. 2008) This the Hardy Affidavit does **not** do. Hardy's Affidavit supporting its *Vaughn* Index also suffers the defects of being conclusory and/or too broadly sweeping. *King v. United States Dep't of Justice,* 265 U.S. App. D.C. 62, 830 F.2d 210, 219 (D.C. Cir. 1987). Hardy's Affidavit, moreover, fails to provide meaningful representations regarding segregability of documents into exempt vs. non-exempt categories, and it fails to provide a detailed Vaughn index showing the appropriateness of the segregability decisions Hardy made, thereby blocking this Court from making, as it must, a specific finding of appropriateness of segregability. *Elec. Privacy Info. Ctr. v. DOJ,* 511 F. Supp. 2d 56. 64-65 (D.C. Col. 2007) (The court is required to make a specific finding as to segregability,[ *Ctr. for Auto Safety v. EPA,*... 731 F.2d 16, 21 (D.C. Cir. 1984)).]; *see also Trans-Pacific Policing Agreement  v. U.S. Customs Serv.*, 336 U.S. App. D.C. 189, 177 F.3d 1022, 1028 (D.C. Cir. 1999), and "the burden is on the agency to sustain its action," 5 U.S.C. § 552(a)(4)(B). To satisfy this burden, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and **correlating those claims with the particular part of a withheld document to which they apply.**'" *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1210 (quoting *King v. U.S. Dep't of Justice*, 265 U.S. App. D.C. 62, 830 F.2d 210, 224 (D.C. Cir. 1987) (emphasis omitted)) The Hardy Decl. woefully fails to accomplish this endeavor.

It is for these reasons that Abdul-Alim claims that the Agency has acted in bad faith.

**III.     This FOIA case is not appropriate for summary judgment, where there are disputed facts, where Hardy's state of mind is in issue, and where Abdul-Alim's right of access is made absolute by the above constitutional requirements and where Abdul-Alim has demonstrated the inapplicability of certain exemptions claimed wrongfully by FBI.**

**(a)  This case is not appropriate for summary judgment.**

The Plaintiff's Responsive Pleading to Rule 56.1 and the Affidavit of James B. Krasnoo with attached exhibits demonstrate the existence of disputed facts sufficient to defeat summary judgment.

**(b)  Hardy's state of mind is in issue.**

Argument II, *supra*, demonstrates that Hardy's state of mind is an issue in this case. One can see the absence of good faith when there is a deliberate withholding of documentation relating to the Abdul-Alim, Sheehan and Hisgen meeting which is the subject of a specific request and a noteworthy claim that a report of that meeting is exempt from disclosure. Similarly, how can there be a good faith basis for locating two CDs, informing Abdul-Alim of their existence, providing no explanation for the failure to produce them and giving no description for the contents of the CDs, save for the fact that they are "verbal?"

**(c)  Abdul-Alim is constitutionally entitled to these materials.**

Abdul-Alim had a right to present a defense that he had "planted" on him a gun by police officers because he refused to cooperate with the FBI and to become an informant for it. He had a right to learn the identity of the FBI agent who met with him in person, along with Sheehan, within two weeks after his arrest. He had a right to learn when his then wife, Stewart, who testified throughout pre-trial and trial proceedings, first enjoyed government payments as a cooperating informant and first gave information to

Sheehan about Abdul-Alim. He had a right to demonstrate the government's continuing interest in him through various documents that the government had in its possession. The claimed exemptions are by statute and cannot eviscerate a criminal defendant's right to exculpatory evidence in the government's possession. *Wearry v. Cain*, 136 S. Ct. 1002-1008 (2016) (*per curiam); Kyles v. Whitley*, 514 U.S. 419, 441, 115 S. Ct. 1555 (1955).

The Defendant is entirely silent with regard to this constitutional issue and, most likely, will claim it to be irrelevant. No case law to the knowledge of the undersigned addresses this issue. In all federal and state prosecutions, the Government must turn over all exculpatory evidence and cases that discuss this requirement never address the possibility that the exculpatory information can be withheld if a FOIA exemption could otherwise be claimed.

Moreover, as can be seen below, the Agency "stretches" the exemptions it relies upon to ensnare the documents into a trap of complete or partial non-disclosure when no such legitimacy exists. See specific examples, *infra,* and in PLAINTIFF'S RESPONSIVE PLEADING PURSUANT TO LOCAL RULE 56.1. To give but one illustration in this section of the memorandum, Defendant claims (b)(7)(C) exemption for documents containing information clearly in the public domain such as a rather routine traffic accident report where the names of the responding local police officers who met with Abdul-Alim and engaged him in direct conversation remain undisclosed. See *Canning v. United States DOJ*, 567 F. Supp. 2d 104 (D.C. Col. 2008)

### (d) Abdul-Alim has demonstrated the inapplicability of certain exemptions claimed wrongfully by FBI.

In *Union Leader Corp. v. United States Dep't of Homeland Sec.*, 749 F. 3d 45 (1st Cir. 2014), the First Circuit, in a FOIA case brought by a newspaper against Homeland

Security, engaged in a balancing test to see whether the public interest in disclosure

outweighs the privacy interests of six aliens with prior criminal convictions or arrests

who were arrested by ICE in September, 2011. The Court, at pp. 49-50, noted the

statute's policy of full agency disclosure:

> The Supreme Court has stated that FOIA was "enacted to facilitate public access to Government documents" and "designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991) (citation omitted) (internal quotation marks omitted). FOIA's "basic policy of full agency disclosure"  furthers the statute's essential purpose of permitting citizens to know "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989) (citation omitted) (internal quotation marks omitted); see also *Nat'l Archives & Records Admin. v. Favis*h, 541 U.S. 157, 171, 124 S. Ct. 1570, 158 L. Ed. 2d 319 (2004).

> This right of access is not absolute, however, as FOIA exempts certain categories of materials from disclosure in order to "effectuate the goals of the FOIA while safeguarding the efficient administration of the government." *Carpenter[v. U.S. Dep't of Justice],* 470 F.3d [434], 438 [(1st Cir. 2006)]; see also 5 U.S.C. § 552(b) (setting forth the statutory exemptions). Nevertheless, in keeping with FOIA's underlying presumption in favor of broad disclosure, the government agency bears the burden of proving the applicability of a specific statutory exemption. See *Carpenter,* 470 F.3d at 438; *Church of Scientology[Int'l v. U.S. Dep't of Justice]*, 30 F.3d [224], 228 [(1st Cir. 1994)]. "That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document." *Ray,* 502 U.S. at 173. The district court must determine de novo whether the agency has met this burden. See *Reporters Comm.*, 489 U.S. at 755; *Carpenter*, 470 F.3d at 438; *Church of Scientology*, 30 F.3d at 228.

> FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), shields from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." In determining whether an invasion of personal privacy is "unwarranted," courts must balance the implicated privacy interest against the public interest in releasing the materials. *Favish,* 541 U.S. at 171; *Reporters Comm.,* 489 U.S. at 762; see also *Carpenter,* 470 F.3d at 438.

This is the test which the Court must apply in this case: Abdul-Alim's compelling public interest is the right of any criminal defendant to present his full, fair defense, utilizing exculpatory evidence in the Government's possession to corroborate his own trial statements; the government must prove the applicability of the specific exemption in the circumstances of this case. *Union Leader* at p.51 ("'the privacy interest [i]s a "variable" that must be determined and weighed in light of the particular circumstances in each case.' *Providence Journal Co. v. U.S. Dep't of Army*, 981 F. 2d 552, 569 (1st Cir. 1992)"), p. 52 ("whether disclosure of a list of names is a significant or a <u>de minimis</u> threat [to privacy] depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." [*U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n. 12 (1991)); p. 54 ("[W]e must consider 'the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny.' *Reporters Comm.,* 489 U. S. at 772; see also *Carpenter,* 470 F. 3d at 440.")

Abdul-Alim claims that the public interest in and defendant's obtaining exculpatory evidence to extricate himself from conviction is a significant one, an interest more specific than having the information for its own sake, and that information is likely to advance that interest. See *Union Leader Corp.,* 749 F. 3d at p. 54; see also *Favish,* 541 U.S. at 172. He claims further and has demonstrated in his Responsive Pleading to Rule 56.1 and the Affidavit of James B. Krasnoo with attached exhibits that Hardy acted negligently in the performance of his duties. *Union Leader Corp, Id.* "Disclosure, not secrecy, is [the] dominant objective of FOIA." *DOI v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001); *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)

("Since purpose of Freedom of Information Act is to pierce veil of administrative secrecy, exemptions must be narrowly construed.") FOIA exemptions are narrowly construed to effectuate act's basic policy in favor of disclosure of government-held information. *New England Apple Council v. Donovan,* 725 F. 3d 139, 141 (1st Cir. 1984).

### The (b)(1), (b)(3) and (b)(7) exemptions

To the extent that the (b)(1) and (b)(3) exemptions seek to exclude names, Plaintiff has no quarrel as to documents that clearly designate that they contain information relating to terrorism or national security matters. The Defendant, however, has failed to provide sufficient information so that Plaintiff can determine whether the designation is well-founded.  Plaintiff claims that careful review of documents 815 and 838 demonstrate on their face the inapplicability of a classification marking at the "secret" level or rendering them matters of national security; document 815 appears to involve a rear-end motor vehicle accident and a police chase in Massachusetts, and document 838 involves a traffic stop of Abdul-Alim by Springfield Police Department on 5/14/09 -  hardly the kinds of facts that can claim a "secret" level classification, endanger national security, or reveal intelligence source and method or law enforcement techniques. "In order to fall within exemption (b)(1), the agency must demonstrate that it has followed proper procedures in classifying documents at issue and that the documents logically fall within classification requirements and that the exemption is justified because of danger to national security. See *Lesar  [v. United States Dep't of Justice],* 636 F. 2d [472,] 479-[4]85 [(D.C. Cir. 1980)]" *Schlesinger v. CIA,* 591 F. Supp. 60, 67 (D.C. Col., 1984) Documents 815 and 838 are therefore not properly classified under an

Executive Order in the interest of national defense or foreign policy. See *Alfred a. Knopf, Inc. v. Colby*, 509 F. 2d 1362 (4th Cir. 1975), cert. den. 421 U.S. 908 (1975)

These documents, available for public scrutiny, in state court proceedings against or involving Abdul-Alim are not made confidential by a simple change from state police custody to FBI custody. *Cooper v. IRS*, 450 F. Supp. 752, 753 (D.C. Col. 1977) Similarly, documents 755, 761, 788, 792, 804, 806, 817, 830, 831, 833, 1987 and 1988 provide on the face of each document little or no factual information of any kind to sustain or eliminate the use of a "secret" level classification or of a national security exemption. It is impossible to confirm or deny that these documents in their presently redacted condition contain "detailed information" which could cause "hostile entities" to "severely disrupt the FBI's intelligence-gathering capabilities." See ¶¶ 61-63, 67-69 Hardy's Decl. Moreover, not all intelligence sources and methods are barred from disclosure, especially when these sources, such as Hisgen, Stewart and Sheehan are already fully disclosed. To the extent these documents delineate any information from these three individuals about persons other than Abdul-Alim, such information is irrelevant as the purposes for securing the data contained in the documents are to demonstrate the FBI's long-abiding interest in Abdul-Alim as a potential informant, Abdul-Alim's rejection of the FBI's/Hisgen's desire to utilize him as a source of information and the commencement of Ms. Stewart's role with FBI as a confidential source "on the take" from the FBI as a result of her purchased cooperation.

Even if a promise of confidentiality were made to Sheehan or Stewart, those promises do not defeat a right of disclosure, especially when that data is out in the public domain because Sheehan and Stewart publicly testified to much detailed information at

trial, and Hisgen testified to the meeting at length as a witness in a motion hearing.

*Robles v. Environmental Protection Agency*, 484 F. 2d 843, 846 (4th Cir. 1973)("While, perhaps, a promise of confidentiality is a factor to be considered, it is not enough to defeat the right of disclosure that the agency 'received the file under a pledge of confidentiality to the one who supplied it. Undertakings of that nature cannot, in and of themselves, override the Act.' *Ackerly v. Ley* (1969) 137 U.S. App. D.C. 133, 420 F.2d 1336, 1339-40, n. 3; *Legal Aid Society of Alameda County v. Shultz* (D.C.Cal. 1972) 349 F. Supp. 771, 776"); *Petkas v. Staats*, 501 F.2d 887, 889 (D.C. Cir. 1974).( "Nor can a promise of confidentiality in and of itself defeat the right of disclosure.") A government agency cannot evade requirements of 5 U.S.C.S § 552 simply by representing to information supplier that the information will be kept confidential. *Metropolitan Life Ins. Co. v. Usery*, 426 F. Supp. 150, (D.C. Col., 1976), cert. den. 431 U.S. 924 (1977). If information obtained by promise of confidentiality was not subject to disclosure requirements, the agency, by handing out promises of confidentiality, could undermine Freedom of Information Act's (5 U.S.C.S. § 552) guaranty of *de novo* judicial review as to whether record is being improperly withheld. *Save Dolphins v. United States Dep't of Commerce,* 404 F. Supp. 407, 411 (N.D. Cal. 1975)

"It is a well-established rule of law that '[a] trial is a public event,' and '[what] transpires in the courtroom is public property.' *United States v. Mitchell*, 179 U.S. App. D.C. 293, 551 F.2d 1252, 1261 (1976), *cert. granted* 430 U.S. 944, 97 S. Ct. 1578, 51 L. Ed. 2d 791 (1977), quoting *Craig v. Harney*, 331 U.S. 367, 374, 91 L. Ed. 1546, 67 S. Ct. 1249 (1947). This is true of confidential as well as non-confidential items." *Cooper v. IRS*, 450 F. Supp. 752, 754 (D.C. Col. 1977). "Since publicly known information cannot

reasonably be expected to damage national security, such information should not be withheld." *Peterzell v. Department of State,* 60 AdL2d 629 (D.C. Col., 1984. Because the FBI has provided nothing to substantiate Hardy's conclusions, because Hardy's Affidavit does not describe with reasonable specificity undisclosed portions of documents and only skeletal justification for their non-disclosure, and because Abdul-Alim has sustained his burden to show both the inapplicability of the claimed exemptions to some of the documents and agency bad faith, this Court, in making its *de novo* review should examine *in camera* unredacted versions of the thirty (30) pages and also the 2 CDs, as no exemption of any kind has been claimed by Defendant for the CDs. *Fensterwald v. United States Cent. Intelligence Agency,* 443 F. Supp. 667, 669-670 (D.C. Col., 1977) ("Where, as here, the agency has tendered only skeletal justifications to support broad claims of exemption and where, as in this case, the withholding authority runs the distinct risk of compromising protected national security secrets if required to particularize its justifications in greater detail, the prudent course is to make a limited *in camera* review of a sampling of the withheld items. Proceeding in this way will allow the fact-finder to render an informed judgment regarding the agency's general claims of exemption."); *Pratt v. Webster*, 508 F. Supp. 751, 756-764 (D.C. Col. 1981), rev'd on other grounds, remanded on other grounds, 673 F.2d 408 (D.C. Cir. 1982)(  See also *Ray v. Turner*, 587 F. 2d 1187, 1194-1195 (D.C. Cir. 1978)(summarizing characteristics of de novo review in the national security context); *Bell v. United States*, 563 F. 2d 484, 487 (1st Cir. 1977) **and** *Hrones v. CIA,* 685 F. 2d 13, 18(1st Cir. 1982) (The Freedom of Information Act now authorizes in camera review of documents claimed to be exempt on national security grounds.);*Miller v. Casey,* 730 F. 2d 773, 776 (D.C. Cir. 1984)(The district court was not

obliged to accept [intelligence agent's] affidavit without question. The court was required to "determine the matter de novo," placing "the burden . . . on the agency to sustain its action."); *St Louis Post-Dispatch v FBI*, 447 F. Supp. 31,  35 (D.C. Col., 1977) ("Plaintiffs have made a credible challenge to some of the defendants' claimed exemptions, and fairness dictates that the Court in this case determine *de novo* the applicability thereof, by means of *in camera* inspection of a few representative documents bearing in mind, of course, that the agency's affidavits will be accorded substantial weight where national security exemptions are claimed.")

 This Court should also demand production of the Hisgen report of his meeting with Abdul-Alim and Sheehan after Abdul-Alim's arrest, as that document's contents threaten neither national security nor demonstrate intelligence source and method or law enforcement techniques, procedures or guidelines.

 The fact that FBI compiled these records concerning Abdul-Alim during its counter-terrorism investigation of Plaintiff does not, without more, automatically forbid them from disclosure.  As stated above, documents which would be accessible to Abdul-Alim from state court record custodians do not become confidential because they have been disseminated to federal law enforcement bodies.

 **The (b)(6) and (b)(7) exemptions.**

 Much of the law upon which Abdul-Alim relies, recited above, is equally applicable here.

 Abdul-Alim seeks only data that supports his defense because he is constitutionally entitled to that evidence. That data consists of documentation that shows the FBI's abiding interest in him as a potential informant. That data does not consist of

names that have to be protected. He nevertheless is entitled to the names that are in the public domain; these certainly include not only Hisgen, Sheehan and Stewart, but also the names of local or state police officers who spoke with Abdul-Alim at traffic stops and auto accidents. To the extent that these documents remain redacted, they set forth an incomplete event to which Abdul-Alim is entitled. An officer's name is appended to any local law enforcement police report, is filed in a county courthouse and is disseminated to a defendant to prepare for trial. These are not the kind of documents where a police officer has an "interest in keeping personal facts away from the public eye," *Reporters Committee, supra*, 489 U.S. at 756, 763; he is not a private individual or private citizen whom FOIA had in mind to protect, but a public servant who, by virtue of his societal position, expects to be constantly identifiable. C.f. *Id.*, at 765-766. These police officers have never furnished information of a confidential nature, a requirement for proper application of (7)(D), as the contents of reports they authored were neither confidential information nor provided by the authors directly to the FBI at or shortly after the time of their creation.  It is properly of public concern that a person who speaks with a police officer about an auto accident or a motor vehicle traffic stop should be able to identify to whom he spoke. The public interest served by such disclosure is significant and disclosure of the documents advances that interest. *Favish*, 541 U.S. at 172.  That interest is **not** for the purpose of showing that police officers or FBI agents did improperly perform their duties, as Defendant asserts at pp.26-27 of its memorandum. The documents merely confirm their interest in Abdul-Alim as a potential informant. *Maynard v. CIA*, 986 F. 2d 547 (1st Cir. 1993) is not in point; Hisgen's name is already revealed and he was a public witness at a public trial; this is equally true of Sheehan and

of Stewart. They, known to Abdul-Alim, could already be subject to harassment or embarrassment or "grudges" by Abdul-Alim, and so, there is nothing to protect. Of course, one should note that nowhere does Defendant allege a scintilla of such behavior on the part of Abdul-Alim; nor could Defendant so allege. These clearly cooperating witnesses surrendered whatever privacy interests they possessed when they, some on multiple occasions, testified at public hearings and at trial but these documents may properly subject them to cross-examination scrutiny when they no longer have any privacy interest to be protected. The investigation by FBI of Abdul-Alim as potential informant is over, as he has consistently refused to be amenable to cooperation. See the inapposite cases of *Maynard, supra*, *Carpenter, supra,* 470 F. 3d at 442, *Moffat v. Dep't of Justice*, 716 F. 3d at 251; *Crooker v. Tax Division of US Dep't of Justice*, 1995, WL 783236, at *18, *Fitzgibbon v. CIA*, 911 F. 2d at 767 relied upon by Defendant at its memorandum at pp. 27-28. Abdul-Alim does not seek the identities of persons who provided data to FBI about counterterrorism activities. He seeks documentation that FBI constantly sought **his** cooperation, not the cooperation of others, as their cooperation is irrelevant to his enumerated needs in his FOIA request.

There is yet another public interest served by disclosure: these documents do reveal data which increases the public's understanding of FBI operations. These documents cumulatively reveal one FBI procedure is constantly to solicit individuals in society to urge them to become sources of information to FBI. These documents cumulatively reveal that another FBI procedure is to collect any documentation in the hands of any other law enforcement agencies about the individual it seeks to acquire as an informer. These are hardly the techniques and procedures that need protection under

(b)(6) or (b)(7) and are not the kinds of techniques and procedures contemplated by the FOIA exemptions; if it were otherwise, no FBI 302s or like documents would ever be disclosed because the very making of the document qualifies as a technique or procedure utilized by law. Most members of the public do not know of the information-gathering resources of the FBI and thereby would acquire greater understanding of the FBI's methods. None of these documents need to name names or reveal identities other than the ones specifically addressed above. While the agency harps on the risk of disclosure of unnamed persons, the names, other than the ones already discussed, are not necessary to Abdul-Alim's expressed needs to the agency, first expressed in Robinson's letter and e-mail and later expressed by Krasnoo's email with attachments to AUSA Sady.

The agency should not be permitted hide behind the inapplicably protective exemptions of (b)(6) and (b)(7).

As to (b)(7)(E), Abdul-Alim does not seek case file numbers, names of databases or information as to how the data bases are searched or used. He seeks only what he has clearly stated above: to demonstrate the FBI's long-abiding interest in Abdul-Alim as a potential informant, Abdul-Alim's rejection of the FBI's/Hisgen's desire to utilize him as a source of information and the commencement of Ms. Stewart's role with FBI as a confidential source "on the take" from the FBI as a result of her purchased cooperation. Exemption (b)(7)(E) is irrelevant to the data Abdul-Alim seeks and is improperly used by Defendant to deflect attention from the real issue in this case, namely the FBI's refusal to impart non-protected information to Abdul-Alim that fits what he clearly seeks and sets forth above in this paragraph.

For the above reasons, Defendant's Motion for Summary Judgment should be denied.

The Plaintiff
Ayyub Abdul-Alim
By his Attorney,

*/s/ James B. Krasnoo*
James B. Krasnoo
(BBO# 279300)
Krasnoo, Klehm and Krasnoo, LLP
28 Andover Street,
Suite 240
Andover, MA  01810
(978) 475-9955

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants via first class mail, postage prepaid, on July 27, 2017.

*/s/ James B. Krasnoo*
James B. Krasnoo