# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____ )
AYYUB ABDUL-ALIM,                                )
                 Plaintiff,           )
                                                 )
    v.                                          )      **CIVIL ACTION**
                                                 )      **NO. 14-30059-TSH**
                                                 )
CHRISTOPHER A. WRAY,                             )
Director, Federal Bureau of Investigation, and   )
and JEFFERSON B. SESSIONS III, Attorney General, )
                 Defendants.          )
_____ )

## MEMORANDUM OF DECISION AND ORDER
### September 29, 2017

**HILLMAN, D.J.**

### Introduction

Ayyub Abdul-Alim ("Abdul-Alim" or "Plaintiff") has filed a Complaint for Injunctive

Relief (Docket No. 1) against Christopher A. Wray, Director Federal Bureau of Investigations

and Jefferson B. Sessions III, Attorney General (collectively, Defendants)[1] under the Freedom of

Information Act, 5 U.S.C. §552 ("FOIA") seeking disclosure and release of agency records he

alleges were improperly withheld from him by the Department of Justice ("DOJ") and the

Federal Bureau of Investigation ("FBI").  In support of his request for the information, Abul-

Alim asserted that he was facing criminal charges in Massachusetts state court and during a

---

[1] Plaintiff original named James B. Comey, Director Federal Bureau of Investigations and Eric Holder, Attorney General as defendants in this action. However, when a party in an official capacity ceases to hold office while the action is pending, his successor is automatically substituted as a party and thereafter, proceedings should reflect the substituted parties name. *See* Fed.R.Civ.P. 25(d).

pretrial hearing, it came to light that: (1) a member of the Joint Counterterrorism Task Force was aware of him; (2) A confidential informant in his case had been paid by the FBI; (3) immediately following his (Abdul-Alim's) arrest, the agent contacted his supervisor at the Joint Counterterrorism Task Force; and (4) after his arrest, the agent and an FBI agent conducted an unrecorded interview with him at the police station. Thereafter, Abdul-Alim and his counsel attempted to obtain records of any investigation by the FBI involving him. As of the date he filed this action, Abdul-Alim had not received any records from the FBI.

After the filing of this suit, the FBI notified Abul-Alim that it had located approximately 5,600 pages of records and 2 CDs (containing audio and visual recordings) responsive to his requests. While the FBI has since turned over substantial amount of materials to Abdul-Alim, it has withheld some information pursuant to various exemptions set forth in the FOIA. Abdul-Alim informed the Defendants that he would only be challenging the redaction of information in 30 specific pages, which he believes are relevant to his ongoing appeal of his Massachusetts state court conviction for the unlawful possession of a firearm. Defendants' have filed a motion for summary judgment requesting a ruling from this Court that Plaintiff is not entitled to disclosure of any of the redacted information contained in those 30 pages. *See Defs' Mot. For Sum. J.* (Docket No. 63) and *Mem. Of L. in Supp. Of Def's Mot. For Sum. J.* (Docket No. 64)("*Def's Mem.*"). For the reasons set forth below, that motion is *granted*.

### <u>Standard of Review</u>

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)).

"'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

"In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA. Because the court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, summary judgment for an agency is only appropriate after the agency proves that it has 'fully discharged

its [FOIA] obligations.'" *Neuman v. United States,* 70 F. Supp. 3d 416, 421–22 (D.D.C. 2014)(internal citations and citation to quoted case omitted); *see also Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir. 2006)( "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions, and district courts are required to make de novo determinations as to the validity of the asserted exemptions."(internal citation omitted)).

### Facts

By letter dated October 31, 2013, Abdul-Alim submitted a FOIA request to FBI Headquarters, Records Management Division, Winchester, Virginia. The request sought any and all records of investigation by the FBI involving Abdul-Alim, including Joint Task Force investigation records from his date of birth to present. By facsimile dated January 23, 2014, the FBI received a completed Form DOJ-361 from Thomas E. Robinson ("Robinson"), counsel for Plaintiff, which Abdul-Alim signed under penalty of perjury. The DOJ-361 also authorized the FBI to release information concerning Abdul-Alim to Robinson.

In his letter, Plaintiff indicated that he was seeking the information in order to adequately prepare a defense to criminal charges in the Hampden Superior Court of Massachusetts resulting from a Joint Task Force investigation which led to him being charged with unlawful possession of a firearm. Plaintiff claims that the firearm was "planted" on him by police because he rebuffed several FBI attempts to recruit him as a confidential informer about Muslim activities in his area. He made his FOIA records request after the Massachusetts District Attorney's office opposed his obtaining information relating to the FBI's alleged lengthy interest in him as an informant. Robinson had contacted the FBI about the necessity of obtaining the requested information to assist in Abdul-Alim's trial defense and informed the FBI that due to testimony at trial and in

pre-trial hearings, some information, including the name of a confidential source and name of law enforcement agents was a matter of public record. He was unable to obtain the FOIA records before trial. Without the records requested from the FBI, Abdul-Alim had nothing to corroborate his defense that the firearm had been planted. He alleges that these records could have: established times and dates of his meeting a FBI agent at a mosque; revealed the name of the FBI agent (which he now knows) who met with him and another law enforcement agent after his arrest and who could have been subpoenaed to give testimony at the trial. Abdul-Alim believes the FOIA records could have been material to his defense given that the jury twice reported being deadlocked before convicting him. Currently, he claims that the records could provide substance to a motion for new trial. Plaintiff advised the Massachusetts Appeals Court ("MAC") of his FOIA request and that he hopes to obtain information which would corroborate his defense.  The MAC in affirming Plaintiff's conviction, *see Commonwealth v. Abdul-Alim,* 91 Mass.App.Ct. 165 (2017), noted that he could file a post-conviction motion regarding the FBI records.[2]

By letter dated January 31, 2014, the FBI acknowledged receipt of Robinson's request seeking information on behalf of Abdul-Alim. Additionally, the FBI advised Robinson that it was currently searching its Central Records System for responsive records and that he could check the status of his request at www.fbi.gov/foia. After numerous requests for status checks on the search, on March 13, 2014, the Public Information Officer ("PIO") received a call from Robinson (or someone at his office) requesting an estimated date of completion. The PIO

---

[2] This recitation does not necessarily fit chronologically into the series of events set forth hereafter, however, the Court believes that the reader will have a better understanding of Plaintiff's argument as to why the requested information is important to his criminal case if his position is summarized in a single narrative.

advised that the request was received on January 24, 2014, and assigned to the Initial Processing Unit. The PIO provided the current median processing time for requests at the initial processing stage. The PIO explained what occurs after the initial processing stage, and explained that processing times vary according to the size of the request.

On April 1, 2014, Plaintiff filed his Complaint in this Court. By letter dated April 24, 2014, the FBI advised Robinson that it located approximately 5,600 pages of paper records and 2 CDs consisting of audio recordings potentially responsive to the request.[3]  By letter dated October 30, 2014, the FBI made its first interim release of records to Plaintiff. The FBI advised that 507 pages of records were reviewed and 274 pages of records were being released in full or in part. The records were denied in full pursuant to Exemption (j)(2) of the Privacy Act of 1974, 5 U.S.C.§552q(j)(2), but were processed pursuant to the FOIA to allow Plaintiff the greatest degree of access to them. Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). The release letter failed to identify Exemption (b)(5) which was asserted in the processed records to withhold information on a number of pages. Additionally, the FBI advised that it referred for consultation, records which originated with or contained information concerning other government agencies ("OGAs"). The FBI informed Plaintiff it would correspond with him regarding this information when the consultations were finished. Plaintiff was also advised that he could appeal the FBI's determination to the Office of Information Policy ("OIP") within sixty (60) days.[4]

---

[3] At the hearing, counsel for the Defendants stated that Plaintiff's current counsel, Attorney Krasnoo, had recently informed him that he was unaware of the existence of the 2CDs that had been withheld by the FBI. The FBI sent Attorney Krasnoo, a letter in May stating that the CDs were being withheld pursuant to FOIA Exemptions 6 and 7. At the hearing, counsel for the Defendants pointed out that the FBI had informed Robinson that 2 CDs existed and he never disputed the FBI's right to withhold them. Therefore, the issue of whether the 2 CDs were properly withheld is not before this Court.

4 Every release letter sent to the Plaintiff advised him that he could appeal the FBI's determination to the

By letter dated November 25, 2014, the FBI made its second interim release of records to Plaintiff. The FBI advised that 631 pages of records were reviewed and 318 pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  By letter dated December 22, 2014, the FBI made its third interim release of records to Plaintiff. The FBI advised that 534 pages of records were reviewed and 89 pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). By letter dated March 31, 2015, the FBI made its fourth interim release of records to Plaintiff. The FBI advised that 1,037 pages of records were reviewed and 268 pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). By letter dated April 30, 2015, the FBI made its fifth interim release of records to Plaintiff. The FBI advised that 509 pages of records were reviewed and 216 pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

By letter dated May 29, 2015, the FBI made its sixth interim release of records to Plaintiff. The FBI advised that 182 pages of records were reviewed and 40 pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(D). By letter dated June 30, 2015, the FBI made its seventh interim release of records to Plaintiff. The FBI advised that 95 pages of records were reviewed and 30

---

OIP within 60 days. Moreover, when any records were denied in full pursuant to Privacy Act Exemption (j)(2), they were processed pursuant to the FOIA to allow Plaintiff the greatest degree of access to them. Additionally, when the FBI advised Plaintiff that it referred for consultation, records which originated with or contained information concerning OGAs, it informed him that it would correspond with him regarding this information when the consultations were finished.

pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). The FBI advised that cross-references mentioning Abdul-Alim were processed and the FBI only considered for release pages mentioning Abdul-Alim, or pages that provided context for these mentions. By letter dated July 2, 2015, the FBI advised Robinson that the records released to him on June 30, 2015, had not been Bates stamped consistent with prior releases. Accordingly, the FBI was providing him a replacement CD containing the Bates stamped version of the records originally released to him in June 30, 2015, at no charge.

By letter dated November 30, 2015, the FBI made its eighth interim release of records to Plaintiff. The FBI advised that 9 pages of records were reviewed and 2 pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). The FBI advised that cross-references mentioning Abdul-Alim were processed and the FBI only considered for release pages mentioning Abdul-Alim, or pages that provided context for these mentions. The FBI further advised that a portion of the records previously sent to OGAs for consultation were returned to the FBI. As a result, in addition to the aforementioned pages, the FBI advised that 76 pages of records were reviewed and 65 pages of records were being released in full or in part. Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F). Deletions were made by the Central intelligence Agency ("CIA"), Bureau of Prisons, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and U.S. Immigration and Customs Enforcement ("ICE"). Plaintiff was instructed to write directly to these agencies, should he wish to appeal their denials and he could appeal the FBI's determination to OIP within 60 days.

By letter dated February 4, 2016, the FBI made its ninth and final release of records to Plaintiff. The FBI advised that a portion of the records previously sent to OGAs for consultation were returned to the FBI. As a result, 124 pages of records were reviewed and 112 pages of records were released in full or in part.  Information was withheld pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Deletions were made by CIA; the Executive Office of United States Attorneys; ATF; Department of Defense Office of Inspector General, Defense Criminal Investigative Service; Defense Intelligence Agency; Bureau of Customs and Border Protection, ICE, and the United States Marshall Service. Plaintiff was instructed to write directly to these agencies, should he wish to appeal their denials and that he could appeal the FBI's determination to OIP within 60 days.

Plaintiff subsequently agreed to challenge only the withholdings on 30 specific pages. Those pages were produced to the Plaintiff with significant redactions. By e-mail dated July 27, 2016, Plaintiff's counsel indicated that the purpose of the request for the remaining 30 pages is his client's ongoing state court appeal of a conviction for the unlawful possession of a firearm. Explaining the circumstances surrounding Plaintiff's arrest, the letter details the specific information that is being sought through this final document request. This information details names and identifying information of law enforcement personnel, including an FBI Special Agent.  Plaintiff's counsel wants to review these documents in hopes that they contain information which may help demonstrate that the firearm, which was the subject of Plaintiff's unlawful possession conviction, was planted on him due to his refusal to become a cooperative informant. By letter dated April 7, 2017, the FBI has provided Plaintiff's counsel a copy of the challenged pages containing the coded exemption markings. Plaintiff's counsel also sought a copy of the FBI report delineating a meeting between Abdul-Alim, a member of the joint

counter-terrorism strike force, and an FBI agent. That document has never been produced by FBI, but came to Plaintiff obtained a copy through his present defense counsel (who is not the same counsel representing him in this case).

## Application of the FOIA Exemptions in This Case

### The Exemptions Invoked by the FBI

The Defendants contend that all documents responsive to Plaintiff's request and subject to the FOIA were processed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable non-exempt information in the responsive records. No reasonably segregable, non-exempt portions have been withheld from Plaintiff. Further description of the information withheld, beyond what is provided in the declaration prepared by David M. Hardy ("Hardy"), the Section Chief of RIDS, could identify the actual exempt information that the FBI has protected. *See Declaration of David M. Hardy*, attached s *Ex. 1* to *Defs' Mem.* ("*Hardy Declaration*"). The exemptions asserted by the FBI as grounds for non-disclosure of portions of the 30 pages being challenged by Plaintiff are FOIA exemptions 1, 3, 6, 7(C), 7(D) and 7(E), which are codified at 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E). *See generally id.*

The documents at issue contain, on their face, coded categories of exemptions that detail the nature of the information withheld pursuant to the provisions of the FOIA. The FBI asserted FOIA Exemption (b)(1) to protect classified information. The FBI's bases for the withholding of classified information contained in these documents is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552(b)(1). Exemption (b)(1) protects from disclosure those records that are: (a) specifically authorized under criteria established by an Executive Order ("E.O.") to be

10

kept secret in the interest of national defense or foreign policy; and (b) are in fact properly classified pursuant to such Executive Order. The relevant executive order for the purposes of the present request is E.O. 13526, 75 Fed.Reg. 707 (Dec. 29, 2009)("E.O. 13526"). The FBI asserted Exemption (b)(3) to withhold information which is protected by statute, specifically Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024(i)(1)("Section 3014(i)(1)"). The FBI asserted FOIA exemption (b)(6) and (b)(7)(C) to protect against unwarranted invasions of privacy. 5 U.S.C. § 552(b)(6). 5 U.S.C. § 552(b)(7)(C). The FBI asserted FOIA exemption (7)(D) to protect confidential source information. 5 U.S.C. § 552(b)(7)(D). Specific details of the FBI's reasoning regarding the application of these exemptions will be saved for my discussion of whether the Defendants have established that invocation of these exemptions was justified.

The FBI asserted FOIA exemption (b)(7)(E) to protect against the disclosure of investigative techniques and procedures. 5 U.S.C. § 552(b)(7)(E). The investigative techniques and procedures sought to be protected against this request concern the following: the collection and analysis of information in connection with both criminal and national security investigations; types and dates of investigations referenced in the records at issue, whether they be preliminary or full investigations; sensitive FBI case files and sub-file numbers; names of databases and database search results located through non-public databases used for official law enforcement purposes by the FBI and/or law enforcement personnel; information pertaining to the names, numbers, and/or alpha designators of certain sensitive FBI squads and units; specific sensitive law enforcement techniques utilized to conduct national security investigations; and information

concerning locations, monitoring, and types of devices utilized in surveillances conducted by the FBI in relation to the investigation at issue.[5]

<u>Segregation of the Exempt Information from Non-Exempt Information</u>

Plaintiff has been provided all responsive non-exempt records or portions of records responsive to his FOIA request to the FBI. During the processing of Plaintiff's request, each responsive page was individually examined to identify for release non-exempt information that could be reasonably segregated from exempt information. All segregable information has been released to Plaintiff. The only information withheld by the FBI consists of information that would trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA exemptions.

Of the 30 pages of FBI documents the Plaintiff is challenging one page Released in Full ("RIF") and 29 pages that were Released In Part ("RIP") Each of these categories is discussed below to further address segregability.

(a) Page RIF. Following the segregability review, RIDS determined 1 page could be released in full without redaction as there was no foreseeable harm to any interest protected by a FOIA exemption.[6]

(b) Pages RIP. RIDS further determined, in some instances after consultation with another agency, that 29 pages could be released in part with redactions per the identified FOIA exemptions. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages. The protected material was either exempt itself or was so intertwined with non-exempt information that segregation of the non-exempt information was not reasonably possible without revealing exempt information or leaving nothing but meaningless words or sentence fragments.

---

[5] Plaintiff is not contesting the FBI's withholding of this information under Exemption 7(E), 5 U.S.C. §552(b)(7)(E).

[6] The page released contained no information at all, that is, it was a blank page. At the hearing, counsel for the Defendants confirmed that release of a "blank page" was not in error, that is, it was not the case that it was actually a page which was entirely redacted-- there was nothing contained on the page so it was not withheld.

## Discussion

Abdul-Alim submitted a FOIA request to the FBI seeking any and all records of investigation by the FBI involving him, including Joint Task Force investigation records from his date of birth to present. Plaintiff contests that he has been provided all responsive non-exempt records, all material in the public domain and reasonably segregable non-exempt material. Plaintiff also contests the Defendants right to withhold disclosure of the names of confidential sources, law enforcement agents and others who have testified publicly or are otherwise known. He generally contests that any information can be withheld, regardless of the exemption, if it could constitute exculpatory material to be used at his criminal trial.[7]

The "FOIA serves to expose the operations of federal agencies 'to the light of public scrutiny.' The statute embodies a broad policy in favor of disclosure, reflecting the notion that 'promot[ing] an informed citizenry ... is vital to democracy.' Nevertheless, there are nine categories of exemptions, which permit the government to withhold documents that are otherwise responsive to the request. The nine exemptions are to be construed narrowly, with all doubts resolved in favor of disclosure." *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 250 (1st Cir. 2013)(internal citations and citation to quoted cases omitted). The First Circuit has approved the use of a so called "*Vaughn* Index,[8]" which "correlates information that an agency decides to withhold with the particular FOIA exemption or exemptions, explaining the agency's

---

[7] Plaintiff has conceded that the only issue before the Court is whether the Defendants have properly withheld information contained in the 29 RIP pages. Therefore, to the extent that he is seeking a ruling that there may be additional information responsive to his requests which the Defendants have not identified, that issue is not before me. I have considered Plaintiff's argument to the extent that he is taking the position that Hardy's alleged failure to conduct an adequate and thorough search should be considered by the Court in deciding whether Hardy acted in good faith in preparing and submitting his declaration. *See infra*, at pp. 16-18.

[8] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir 1973).

justification for non-disclosure." *Maynard v. C.I.A.*, 986 F.2d 547, 556 (1st Cir. 1993). "Although a *Vaughn* [I]ndex has 'no set form,' it is well established that the agency's listing must nevertheless 'enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions.'" *Neuman*, 70 F. Supp. 3d at 424.

> An adequate *Vaughn* Index serves three functions:  'it forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.'

*Maynard*, 986 F.2d at 557 (citation to quoted case omitted).  Where the agency does not provide the kind of detail required for a *Vaughn* Index (because such disclosure would reveal secrets, for example), the court may review the documents *in camera* … [in order] to 'determine whether the failure of the affidavit stemmed from mere inadvertence or from a truly overbroad reading of the exemption by the agency.'" *Id.* (citation to quoted case omitted). Where the documents are few in number, *in camera* review is "particularly appropriate." *Id.*

While there are only 29 pages at issue, I do not find that *in camera* review is warranted in this case. Hardy states that he prepared his declaration in accordance with the requirements of *Vaughn*. *See Hardy Declaration*, at ¶4, p. 2.  Upon review of the submission, I find that it is sufficiently detailed, establishes that he followed appropriate procedures and sets forth with sufficient particularity the justification for invoking the exemption. More specifically, I find that Hardy, in a non-conclusory fashion, describes the FBI records system, the scope of the search conducted, and the method by which the search was conducted. I find that the Defendants have established that the FBI conducted a search that was "'reasonably calculated to discover the requested documents'" *Maynard*, 986 F.2d at 559 (citation to quoted case omitted). Accordingly, I decline to exercise my prerogative to conduct an *in camera* review. *See Taylor v. U.S. Dep't of*

*Justice,* 257 F. Supp. 2d 101, 114 (D.D.C. 2003)(where defendant's declaration and *Vaughn* index sufficiently provide court with information about nature of redactions, no further *in camera* review is needed to further assist court in deciding whether disclosure is required); *Hatcher v. Dep't of Justice,* 910 F.Supp. 1, 3 (D.D.C. 1995)(same).

<u>FOIA Exemption 1; 5 U.S.C. §552(b)(1)</u>

FOIA Exemption 1 provides that the FOIA's disclosure requirements do not apply to matters that are "(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The E.O. cited by the FBI is E.O. 13526, which protects from disclosure information which meets the following requirements:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in § 1.4 of this order; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

The information withheld pursuant to Exemption (b)(1) is under the control of the United States Government, is classified and requires a classification marking at the "Secret" level since the unauthorized disclosure of this information reasonably could be expected to cause serious damage to national security. *Hardy Declaration*, at ¶¶56, 58, 599, 61, 62, pp. 23-26. More specifically, Hardy has averred that: the information redacted in the RIP pages was withheld to

protect intelligence activities and methods utilized by the FBI for gathering intelligence data. *Id.*, at ¶¶58, 59, 61, pp. 24-5. He further averred that release of this information could reasonably be expected to cause serious damage to national security. *Id.*, at ¶ 60, p. 25. In the cited paragraphs, Hardy outlined in detail why he takes this position, how the information damage national security and how he made his determination. He further stated that where, in his judgment, the disclosure of the redacted information could "reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure," he exercised his prerogative to designate that information at the "Secret," level and withheld disclosure. *Id.*, at ¶63, pp. 26-7.

When the government refuses to disclose information under Exemption 1 based on a claim of potential disclosure of intelligence sources or methods, the Court is to "accord substantial deference to the [agency's] determination that information must be withheld … and will uphold the agency's decision so long as the withheld information 'logically falls into the category of the exemption indicated,' and there is no evidence of bad faith on the part of the agency. *Maynard*, 986 F.2d at 555–56.

The Defendants assert that the Hardy Declaration establishes that the withheld information is reasonably categorized as information designated "classified" and kept secret in the interest of national defense. The Defendants further assert that the Hardy Declaration establishes that the FBI acted in good faith. Plaintiff contests whether all of the information has properly been withheld as "classified." For example, he points out that from the un-redacted information contained in these pages, it appears that the Defendants are withholding information concerning a traffic stop and a motor vehicle accident— which he suggests are unlikely to implicate matters if national concern. Plaintiff also contends that Hardy failed to conduct a

thorough and adequate search of the records to determine what information the Defendants' possess responsive to his requests, and for that reason, the Court should find that the FBI has acted in bad faith. Finally, Plaintiff contends that Hardy Declaration fails to establish that application of Exemption 1 is appropriate in this case because it fails to demonstrate that he followed the proper procedures in classifying the pages at issue, and he has not set forth with sufficient particularity the justification for the exclusion.

I find that in his declaration, Hardy sets forth in detail how the information falls within and meets the requirements of E.O. 13526 and how it could negatively impact national security by revealing information related to intelligence activities.[9] I do no find that Hardy's failure to disclose information to the Plaintiff is compelling evidence that he failed to conduct a thorough and complete search such that this Court should find he acted in bad faith. In support of this contention, Plaintiff points out that Defendants: never provided him a copy of the report of the meeting between himself and two federal agents (a document which was produced at a hearing open to the public), never notified him of the existence of the 2 CDs, and redacted an entire page which was identified as being subject to full disclosure. However, it is unclear to the Court that Hardy failed to find and disclose the report at issue—the evidence suggests he withheld it under an exemption. As to the CDs, the FBI informed Robinson that they existed and he never disputed the FBI's decision to withhold them. The page which Plaintiff contends was subject to full

---

[9] As to Plaintiff's argument that some of the information at issue appears to involve incidents such as a traffic stop and motor vehicle collision, which he suggests are unlikely to implicate matters of national security, the Supreme Court has stated that: "In the intelligence area .. judges 'have little or no background in the delicate business of intelligence gathering' and may be unable to comprehend the significance of material that appears to be innocuous, but in fact can reveal a significant intelligence source or method.' Therefore, in determining whether withheld material relates to intelligence sources or methods, a court must 'accord substantial weight and due consideration to the [agency's] affidavits.'" *Maynard*, 986 F.2d at 555. I feel comfortable stating that the same limitation applies to legal practitioners.

disclosure, but was given to him fully redacted, was a blank page, *i.e.*, it was not redacted, it simply contained no information. Accordingly, I do not find that any of these allegations rebut the food faith accorded the *Hardy Declaration. See Maynard*, 986 F.2d at 560 (agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.")(citation to quoted case omitted). In any event, regardless of whether the good faith presumption applies, I do not find any evidence of bad faith on the part of Hardy or the FBI.

I find that the Defendants have established that the redacted information logically falls into the category of Exemption 1. I also find that there is no evidence of bad faith. Therefore, to the extent that the Defendants have invoked Exemption 1, the redacted information was properly withheld.

<u>FOIA Exemption 7; 5 U.S.C. §552(b)(7): A General Overview</u>

The Defendants have withheld information from the Plaintiff pursuant to several subsections of the FOIA Exemption 7. FOIA Exemption 7 permits an agency to withhold information which is compiled for law enforcement purposes to the extent that disclosure could reasonably be expected to cause one of six enumerated harms.[10] Before an agency can invoke

---

[10] More specifically, Exemption 7 exempts from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information:

> (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical

any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.

> Pursuant to 28 U.S.C. §§ 533, 534 and E.O. 12333 as implemented by the Attorney General's Guidelines for Domestic Operations ("AGG-DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States.

*See Hardy Declaration*, at ¶71, pp. 29-30. Under this investigative authority, the responsive records were compiled during the FBI's counterterrorism investigation of Plaintiff. *Id*.

To the extent that the Defendants can demonstrate that the information withheld was compiled for law enforcement purposes, it falls within the law enforcement duties of the FBI and would meet the threshold requirement of Exemption 7, 5 U.S.C. §552(b)(7). I find that Defendants have established that the information which the FBI designated as being withheld pursuant to Exemptions 7(C), 7(D) and 7(E) (5 U.S.C. §§552(b)(7)(C)-(E) was compiled for law enforcement purposes and therefore, the threshold requirement for invoking these exemptions has been met.

<u>FOIA Exemption 3 and Exemption 7(E); 5 U.S.C.§§552(b)(1), (b)(7)(E).</u>

The FBI used FOIA Exemption 7(E) in conjunction with Exemption 3. FOIA Exemption 3 pertains to matters that are exempted from disclosure by a statute that either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue,

---

safety of any individual.

5 U.S.C § 552(b)(7). The FBI has withheld records and information in this case pursuant to subsections (b)(7) C), (b)(7)(D) and (b)(7)(E).

or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The exempting statute here is Section §3024(i)(1). As with Exemption 1, when analyzing information withheld pursuant to Exemption 3, the Court accords "substantial deference" to the FBI's determination, which will be upheld if the withheld information "'logically falls into the category of the exemption indicated,' and there is no evidence of bad faith on the part of the agency." *Maynard* 986 F.2d at 555–56. Exemption 3 differs from the other FOIA exemptions in that the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015). FOIA exemption (b)(7)(E) shields law enforcement records that, if produced, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." The Court reviews determinations made under Exemption 7(E) *de novo*— no part of the agency's decision is entitled to deference.

Section 3024(i)(1) provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." On its face, this federal statute leaves no discretion to agencies regarding withholding of information from the public about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by Section 3024(i)(1) is absolute. Accordingly, the statute is an exempting statute within the meaning of Exemption 3, and protects from disclosure intelligence sources and methods. *DiBacco*, 795 F.3d at 197. The FBI is one of 17 member agencies charged with protecting "'national intelligence and intelligence sources and methods and activities from

unauthorized disclosure." *Hardy Declaration*, at ¶66, p. 28. Hardy withheld disclosure of the specified information under Exemption 3 after determining that intelligence sources and methods[11] would be revealed if such information were disclosed and further, that disclosure of such information would present a bona fide opportunity for individuals to develop and implement counter measures, resulting in the loss of significant intelligence information.   While somewhat broad and conclusory, I find this justification establishes that the withheld information logically falls within the statute.

To withhold documents pursuant to Exemption 7(E), "the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement purposes and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011)(internal citations and quotation marks omitted). The conclusory allegations made by Hardy provide less justification for upholding documents under Exemption 7(E).   However, when the Court considers the declaration as a whole, Hardy has provided sufficient details from which the Court can find that a rationale nexus between law enforcement methods/investigations and potential national security risks if the redacted information were disclosed.   Indeed, Hardy indicates in his declaration that he also invoked Exemption 1 in relation to some of this information. The details provided with respect to Hardy's discussion of that exemption support the more conclusory allegations he makes with respect to Exemptions 3 and 7(E). Therefore, I find that the FBI properly invoked Exemptions 3 and 7(E) to withhold the redacted information.

---

[11] Plaintiff does not dispute Hardy's statement that Congress mandated that all intelligent sources and methods utilized by the intelligence community be protected from disclosure, not just *classified* sources and methods.

<u>FOIA Exemptions 6 and 7(C); 5 U.S.C.§§552 (b)(6)</u>

FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records. Under Exemption 6, "personnel and medical files and similar files" may be withheld if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "To determine whether an invasion of privacy is unwarranted, the court balances third party privacy interests against public interest in the release of information. First, as to the third parties' privacy interests …, even 'the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.' Against this privacy interest, 'the only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government.'" *Manchester v. F.B.I.*, No. CIV.A. 96-0137 JAR, 2005 WL 3275802, at *5 (D.D.C. Aug. 9, 2005).

Under Exemption 7(C), "records or information compiled for law enforcement purposes" may be withheld "to the extent that" disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

> [I]n determining the applicability of FOIA Exemption 7(C), the Court is cognizant that it must balance the privacy interests of the third parties against any public interest that might be served by disclosure. In determining whether a privacy interest exists in records related to law-enforcement agencies, it is well established that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation. And, similarly, it is clear that the public's interest in disclosure is not furthered ... by disclosure of information about individuals that is accumulated in ... governmental files but that reveals little or nothing about an agency's own conduct.

*Taylor,* 257 F. Supp. 2d at 114 (D.D.C. 2003)(internal citation, internal quotation marks and citations to quoted cases omitted). "The privacy interest protected by Exemption 7(C) is not a 'cramped' or limited notion of personal privacy. Instead, Exemption 7(C) protects a broad notion of personal privacy, including an individual's interest in avoiding disclosure of personal matters. This notion of privacy 'encompass[es] the individual's control of information concerning his or her person,' and 'when, how, and to what extent information about them is communicated to others.' The individual, and not the agency in possession of the records, controls the privacy interest. *Carpenter*, 470 F.3d at 438. Accordingly, the individual may waive his/her right of privacy. No such waiver has occurred in this place. Accordingly, the Defendants retain the burden of establishing the privacy interest at stake. "[T]he Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to Exemption 7(C), [Nevertheless], any inquiry into the public interest in disclosure of withheld information must [still] focus 'on the citizens' right to be informed about what their government is up to.'" *Id.* (internal citations, citation to quoted cases and quotation marks omitted).

The general privacy interests protected by the FBI in this case encompass the following: names and/or identifying information of FBI Special Agents and support personnel; names and/or identifying information of third parties merely mentioned; names and/or identifying information of local law enforcement personnel; names and/or identifying information of third parties of investigative interest; and names and/or identifying information of third parties who provided information to the FBI. I will now discuss the specific privacy interests identified by the FBI.

23

Pursuant to these exemptions, the FBI protected names, identifying information and/or telephone numbers of FBI Special Agents ("SAs") and local law enforcement agents who were responsible for conducting, supervising, and/or maintaining the investigative activities pertaining to the redacted information at issue. The FBI determined that these law enforcement agents have a privacy interest in not being identified because publicity, good or bad could seriously prejudice their effectiveness in other investigations. Moreover, these individuals have a privacy interest in not being subjected to unofficial questioning of their conduct in Plaintiff's investigation or other investigations. Additionally, law enforcement agents have an interest in maintaining their privacy as targets of investigations may hold grudges and seek revenge, or the nature of the investigation could result in hostility from the public. The FBI redacted the names, telephone numbers and/or identifying information of support personnel and local law enforcement agents as they are in positions of access to information regarding law enforcement and could become targets of harassing inquiries and the like. The FBI protected the names and identifying information of third parties who were merely mentioned in the counterterrorism investigative files. These individuals were only mentioned because they came into contact with targets of the investigation and they were not of any interest to the FBI. These individuals have a substantial interest in not being associated with a counterterrorism investigation. The FBI also withheld identifying information (such as names, ages, dates of birth, social security numbers, addresses, and telephone numbers) of third parties who were of investigative interest to the FBI. The FBI determined that these individuals had a substantial privacy interest in not being identified as targets of a counterterrorism and/or criminal investigation because being identified as such could carry a strong negative connotation or stigma. Finally, the FBI withheld the identifying information (such as names, ages, dates of birth, social security numbers, addresses, and

telephone numbers) of third parties who were interviewed and/or provided information to the FBI. First, these individuals have a privacy interest in having their identities remain private because to be identified as someone who provides information to law enforcement could subject them to harassment, legal or economic reprisal and even physical harm or death. *Hardy Declaration*, ¶¶75-81, pp. 31-36.

In applying these exemptions, the FBI determined that the public's interest in understanding "the operations and activities of the government," exists "only when information about an individual would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners." *Hardy Declaration*, at ¶74, pp. 30-31. This is a reasonable summation of the legal standard to be applied in determining public's interest in this case. Plaintiff contests withholding of this information primarily on the ground that the names of at least some of the SAs and local law enforcement agents and their roles in the investigation are known as a result of his criminal trial, that is, they are a matter of public record. He also asserts that the public has an interest in what procedures and techniques the FBI uses to gather information so that they can acquire a greater understanding of the FBI's methods.

The only information which I find even arguably falls outside the exemptions is the names of the SAs and local law enforcement agents involved in the investigation of Abul-Alim.[12]

---

[12] The Defendants have clearly met their burden under these exemptions to justify the withholding of all identifying information of lower level law enforcement personnel (such as support staff) and third parties who were either witnesses (whether or not s/he provided information to the FBI), were mentioned in the course of the investigation, or were of interest in the investigation. *See Weisberg v. U.S. Dep't. of Justice* 745 F.2d 1476, 1491 (D.C. Cir. 1984); *Sensor Systems Support, Inc. v. F.A.A.*, 851 F.supp.2d 321, 33-34 (D.N.H. 2012); *see also.*

However, in *Maynard*, the First Circuit found such information properly withheld where the plaintiffs had failed to "suggest how the disclosure of the names would reveal what the government is up to." The First Circuit further found that withholding of agents' names and other identifying information is "entirely justified," under Exemption 6 where the agency asserts that disclosure could subject "individuals or their families to harassment or embarrassment, and the public interest in disclosure, if an, [is] minimal." *Id.* In this case, I find that the Defendants have established the requisite privacy interest. It is a closer case as to whether they have established that law enforcement agents' privacy interests outweigh the public's interest in this case. Plaintiff asserts that disclosure of this information would cast light on how the government, and in particular, the FBI operate. The primary focus of his argument in this regard is that the information will assist him his criminal case by casting light on the FBI's alleged conduct in trying to turn him into an informant. However, that the plaintiff has a significant interest at stake is not is not sufficient to warrant disclosure under these exemptions: The focus of Exemptions 6 and 7(C) is the *public's* interest in being informed about the conduct and actions of the *agency*. Disclosure of the names and any other identifying information of the investigatory law enforcement agents would not illuminate the agency's conduct or actions, but would invade the law enforcement agents' privacy. *See Sensor Systems*, 851 F.supp.2d at 333-34. Moreover, that Plaintiff is aware of the identity of a number of the law enforcement agents does not 'undermine the privacy interests of [those] individuals in avoiding harassment and annoyance that could result should the [agency] *confirm* [his or her identity.'". *Id* (some alterations in original)(citation to quoted case omitted); *see also Carpenter*, 470 F.3d at 439 (that informant's name is known, it

---

*Carpenter*, 470 F.3d at 438 (central purpose of FOIA is to reveal government action, not expose actions of private third parties and their participation in or exposure to law enforcement to public).

is further invasion of his protected privacy interest to positively identify him). This is true even where the agent(s) has testified in a court proceeding. *Jones v. F.B.I.*, 41 F.3d 238, 247-48 (6th Cir. 1994). For these reasons, I find that the FBI properly invoked Exemptions 6 and 7(C).

### FOIA Exemption 7(D); 5 U.S.C. §552(b)(7)(D)

FOIA Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source. "Unlike under 7(C), if the government demonstrates that the information requested was given under an assurance of confidentiality, 7(D) does not require a further showing that privacy interests outweigh any public interest in disclosure." *Moffat*, 716 F.3d at 252–53.

In this case, the FBI seeks to protect: the names, identifying data, and/or information provided by sources under implied assurances of confidentiality; confidential source symbol numbers; names, identifying data, and/or information provided by individuals under an express assurance of confidentiality; information provided by and/or identifying data concerning source symbol numbered informants; and names, identifying data, and/or information provided by local law enforcement under implied assurances of confidentiality. Abdul-Alim asserts that he is aware of the identity of at least one confidential source (his former wife). He argues that given that she testified in his criminal proceeding and he is aware of much of the information she provided, there is no basis for the FBI withholding her name or her information.

The FBI alleges that persons provide information in investigations under an express or implied assurance of confidentiality. Maintaining the confidentiality of sources is vital to the information gathering process because cooperating individuals must be free to assist the agency without fear of reprisal. Identifying confidential sources would prevent the agency from further utilizing that individual and would have a chilling effect on future cooperation from other individuals, thus undermining law enforcements most important means of collecting information. *Hardy Declaration,* at ¶¶ 83- 90, pp. 36-41. More specifically, the FBI redacted the names, other identifiers and information of confidential sources in this case, both those with express agreements and those that provided information with the implied understanding that their assistance would remain confidential, because they provided valuable and detailed information concerning the activities of Abdul-Alim and other subject of investigative interest to the FBI or other law enforcement agencies. These individuals could be harmed if their identities and cooperation with the FBI be revealed. This is particularly true given that the investigation involved counterterrorism. The FBI also protected the "permanent source symbol code numbers" of confidential FBI sources.[13] The FBI contends that if it discloses the confidential source numbers, the identities could be ascertained by persons with knowledge of the FBI's investigation. If the FBI discloses information which could identify the confidential sources, they and their families could be subjected to embarrassment, humiliation and or physical or mental intimidation or retaliation. As mentioned previously, it will also have a significant chilling effect on the activities and cooperation of other informants, present and future. *See*

---

[13] The FBI assigns permanent source symbol numbers to confidential informants who report information to the FBI on a regular basis pursuant to express assurance of confidentiality. In this case, the FBI did not refer to the confidential sources by their true names, instead, they were referred to only by their individually assigned permanent source symbol numbers. *See Hardy Declaration*, at ¶ 86, pp. 38-39.

*generally id.*, ¶¶83-90, pp. 36-41. The FBI also protected information provided to it by a local law enforcement agency which obtained information from sources. The sources were in a position to have ready access to, and knowledge about, the targets and others involved in criminal activities associated with the FBI's investigation of the subject. These individuals were exposed to harm and/or hostility should their association and cooperation be revealed and would seriously impair their ability to assist in future investigations. The FBI solicits and receives information regularly from local, state and foreign agencies in connection with criminal and national security investigations. There is an inherent understanding that the any information from these agencies regarding their sources which is shared with the FBI will remain confidential. If the FBI were to reveal such information, cooperation with other agencies would be negatively impacted, causing a significant detriment to law enforcement. *Id.*, at ¶91, pp. 41 42.

Given the nature of the relationship between confidential sources and law enforcement agencies, it is abundantly clear that such sources: (1) play a vital role in law enforcement: (2) at great risk to themselves and their families should their identity become known; and (3) provide information to law enforcement with the express *or* implied understanding that their identities shall remain confidential. Moreover, the confidential source has an interest in not having his role confirmed by the agency. Thus the identities of confidential sources are protected even if the requestor has been able to place a name to that person, either through testimony by the source in court proceedings, by the requestor's process of elimination based on information available to him or otherwise:

> The more difficult question is whether official confirmation of the identity of a confidential source requires disclosure of information in agency records that would identify or tend to identify that source. While the general rule on public

disclosure suggests that such information might no longer be protected, 'Exemption 7(D) differs from other FOIA exemptions in that its applicability depends not on the specific factual contents of a particular document; instead, the pertinent question is whether the information at issue was furnished by a 'confidential source' during the course of a legitimate criminal law investigation.' Recognizing this difference, and considering the text of Exemption 7(D), its legislative history, and the case law, the D.C. Circuit, [*citing Irons v. FBI*, 880 F.2d 1446)(1st Cir. 1989),] held that the public disclosure of the identity of a confidential source does not waive Exemption D's applicability.

*Cobar v. U.S. Dep't of Justice*, 81 F.Supp.3d 64, 72–73 (D.D.C. 2015), *appeal dismissed,* No. 15-5105, 2015 WL 5210343 (D.C. Cir. July 1, 2015); *see also* cases cited therein, *Id.*, at 72 n.4 and *Carpenter*, 470 F.3d at 439; 440 (that informant's identity does not terminate privacy interest). Additionally, the confidential nature of the information is not waived because some of it is made publicly available, through court proceedings or otherwise. For example, should part of a withheld report become public the government may withhold all information in the report that has not been revealed. As to the information that was publicly disclosed through testimony or otherwise, it remains an unanswered question in this Circuit as to whether the already disclosed information is protected. However, what is clear is that the most the requestor is entitled to is the information that he already has. *See Moffat*, 716 F.3d at 253-54. I need not resolve this latter issue because it is clear that Plaintiff is in possession of all such information. Therefore, for the reasons set forth above, I find that the Defendants have established that the FBI was justified in invoking this exemption.

<u>Segregation</u>

"The FOIA … provides for partial disclosure of documents that contain some exempted information, mandating that 'all reasonably segregable, non-exempt portions of any agency records must, after deletion of the exempt material, be disclosed to a requester' In determining segregability, 'courts must construe the exemptions narrowly with the emphasis on disclosure,' .

An agency may withhold non-exempt information only if it is so interspersed with exempt material that separation by the agency, and policing of this by the courts would impose an inordinate burden." *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994). I find that the Defendants have met their burden of establishing that the FBI disclosed all reasonably segregable portions of the 29 RIP pages have been provided to Plaintiff after redacting those portions for which it claimed exemptions.

<u>Plaintiff's Constitutional Right to Disclosure of the Requested Information</u>

Abdul-Alim asserts that the requested information should be turned over to him because it is relevant to his pending criminal proceedings because it could establish that in retaliation for his refusing to become an informant, law enforcement planted on him the firearm of which he was convicted of unlawfully possessing. While I do not question Plaintiff's right to seek to obtain evidence which may assist in his criminal defense and/or may prove exculpatory to the charges against him, he has not cited to any cases in which such interests override the government's withholding of requested information pursuant to justifiably invoked FOIA exemptions. The precedent on this issue is decidedly against him. *See Carpenter*, 470 F.3d at 441 and cases cited therein. Plaintiff's attempt to make such information *discoverable* by asserting that his criminal conviction was the result of a joint state and federal investigation and therefore, the requested information is potentially exculpatory material which must be disclosed under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) is to no avail. First, this is not a collateral attack proceeding whereby he can challenge whether he was provided all the discovery to which he was entitled in his state court criminal proceeding. *See Willis v. Dep't of Justice*, 581 F.Supp.2d 57, 67 (D.D.C. 2008)(court declines requestor's invitation to expand scope of case to turn it into a collateral attack on his conviction; plaintiff's obligation is to show that defendant

31

fully discharged their obligations under the FOIA). Second, the MAC found that on the record before it, "no basis to question [the Commonwealth's] assertion or the motion judge's conclusion that no joint investigation occurred." *Abul-Alim*, 91 Mass. App.Ct. at 168.

For the reasons stated, the Defendants' motion for summary judgment is *granted*.[14]

### **Conclusion**

Defendants' Motion For Summary Judgment (Leave to File Granted: April 7, 2017) is *granted*.

SO ORDERED.

 **/s/ Timothy S. Hillman**
 **TIMOTHY S. HILLMAN**
 **UNITED STATES DISTRICT JUDGE**

---

[14] At the conclusion of the hearing, Defendants' counsel requested to file a reply brief summarizing the oral arguments he'd made to the Court. I informed both parties that if after reviewing the record I found that additional briefing would assist me in making my decision, I would allow Defendants' to file a brief reply and Plaintiff to file a sur-reply. However, after a review of the record, including the parties' arguments, I found that further briefing was not warranted.